Filed 4/30/26  In re Jay.S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Jay.S., a Person Coming Under the Juvenile Court Law. | B348398 (c/w B349237) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Jo.S. et al., Defendants and Appellants. | (Los Angeles County Super. Ct. No. 24CCJP03582A) |

APPEALS from an order of the Superior Court of Los Angeles County, Safaan K. Ahmed, Judge.  Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Jo.S.

Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant L.G.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendants and appellants Jo.S. (father) and L.G. (mother) appeal from the juvenile court's August 20, 2025, order terminating their parental rights to Jay.S. (minor, born July 2023).  Father and mother's sole contention is that the court and the Los Angeles County Department of Children and Family Services (DCFS) failed to fulfill their duties of initial inquiry as required by the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.

Because the juvenile court's ICWA findings are supported by substantial evidence, we affirm.

## BACKGROUND

In November 2024, DCFS filed a Welfare and Institutions Code section 300 petition[1] seeking the juvenile court's exercise of dependency jurisdiction over minor and his twin sister, Jaz.S. (born July 2023).  The petition alleged that Jaz.S. sustained life-threatening injuries consistent with non-accidental trauma and ongoing physical abuse.  A form attached to the petition indicated

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

that mother and father were questioned on November 10, 2024, and the inquiry provided "no reason to believe [minor] is or may be an Indian child."

In the detention report filed on November 13, 2024, DCFS reported that mother, father, the maternal grandmother, a great maternal cousin, and a paternal aunt all denied Indian ancestry. Inquiries were also made of five medical providers attending to Jaz.S. or minor, and all denied having knowledge or information that the family had Indian ancestry. A detective investigating Jaz.S.'s injuries also denied having such knowledge.

Mother and father each filed a parental notification of Indian status form, reporting no known indicators of Indian status. On November 14, 2024, the juvenile court acknowledged receipt of father's form and asked father directly if he had any Indian ancestry. Father denied it. When questioned by the court, the paternal grandmother, a paternal great-aunt, and two paternal cousins also denied Indian ancestry. The court found no reason to know or believe that minor and Jaz.S. were Indian children.

Jaz.S. died on November 15, 2024, and the juvenile court subsequently dismissed the dependency petition as it pertained to her.

On November 20, 2024, the juvenile court asked mother whether minor had Indian ancestry. Mother responded, "Not that I'm sure of[.]"

In the jurisdiction/disposition report filed on January 7, 2025, DCFS reported that mother, father, the maternal and paternal grandmothers, a paternal great-aunt, a maternal cousin, and a paternal cousin all denied Indian ancestry. Two other

3

detectives also denied knowledge of the family having Indian ancestry.

DCFS filed an amended petition on January 8, 2025, adding a count pursuant to section 300, subdivision (f), alleging that mother and father caused Jaz.S.'s death through severe abuse or neglect and had been criminally charged with murder.

On January 9, 2025, the juvenile court inquired of the maternal grandmother and a maternal great-aunt, who both denied Indian ancestry. The court found that DCFS had satisfied its duty of ICWA inquiry.

On February 6, 2025, the juvenile court further amended the dependency petition by interlineation and sustained counts under section 300, subdivisions (a) (serious physical harm), (b)(1) (failure to protect), (f) (death of another child through abuse or neglect), and (j) (abuse of sibling). The court also asked two maternal aunts and a paternal cousin who were present at the hearing if they were aware of any Indian ancestry, which they denied.

A DCFS social worker spoke with the paternal grandfather on March 4, 2025, regarding possible placement of minor. The record does not reflect that the paternal grandfather was asked about Indian ancestry. The social worker called the paternal grandfather again on March 18, 2025, but there was no answer and a voice message could not be left. The social worker called again on April 3, 2025, and was still unable to leave a message. On April 17, 2025, the social worker was able to leave a voice message asking for a return call. The record does not reflect that the call was ever returned.

On April 23, 2025, two paternal uncles denied Indian ancestry when asked by the juvenile court.

4

At the section 366.26 hearing on August 20, 2025, the juvenile court renewed its finding that there was no reason to know that minor was an Indian child.  The court terminated father and mother's parental rights to minor.  Both appealed.

## DISCUSSION

Father and mother contend that the order terminating their parental rights must be conditionally reversed because, by failing to ask the paternal grandfather about possible Indian ancestry, DCFS conducted an inadequate initial ICWA inquiry.  We disagree.

"ICWA was enacted 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies," ' and 'aims to keep Indian children connected to Indian families.'  [Citation.]"  (*In re Bella L.* (2026) 117 Cal.App.5th 1284, 1289 (*Bella L.*).)  To that end, "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards.  [Citations.]"  (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129.)

Under California law enacted to implement ICWA, the juvenile court and DCFS "have duties aimed at assessing whether a child in a dependency action is an 'Indian child'—that is, a child who (1) is 'a member of an Indian tribe,' or (2) 'is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  [Citations.]"  (*Bella L.*, *supra*, 117 Cal.App.5th at pp. 1289–1290.)  Under its initial duty of inquiry, DCFS "has an ongoing and affirmative duty 'to inquire

5

whether [a] child is an Indian child,' which includes the duty to ask 'extended family members' 'whether th[e] child is or may be an Indian child.' (§ 224.2, subds. (a) & (b).)" (*Bella L.*, *supra*, at p. 1290.) Discharge of this duty "does not require interviewing 'every' extended family member; rather, where the juvenile court's finding that [DCFS] conducted an adequate inquiry and that ICWA does not apply is 'supported by sufficient evidence,' conditional reversal [of an order terminating parental rights] is not required 'even if the agency did not inquire of everyone who has an interest in the child.' [Citation.]" (*Ibid.*)

A juvenile court's finding that ICWA does not apply " ' "implies that . . . social workers had fulfilled their duty of inquiry." [Citations.]' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) We review that finding for substantial evidence. (See *Bella L.*, *supra*, 117 Cal.App.5th at p. 1286; *In re C.R.* (2025) 112 Cal.App.5th 793, 800.)

Substantial evidence supports the juvenile court's finding that there was no evidence that minor was an Indian child and, therefore, ICWA did not apply. The record discloses that the court and DCFS were aware of and made diligent efforts to comply with their duties of initial ICWA inquiry. Father, mother, the paternal and maternal grandmothers, paternal and maternal great-aunts and aunts, paternal uncles, paternal and maternal cousins, medical providers, and detectives were asked—some repeatedly—about minor's possible Indian ancestry, and all denied having such knowledge.

Although the record does not indicate that DCFS asked the paternal grandfather about Indian ancestry during its single successful attempt to contact him, "this failure does not render [its] otherwise diligent and well-documented efforts unreliable or

the juvenile court's finding that ICWA did not apply unworthy of our deference. [Citations.]" (*Bella L.*, *supra*, 117 Cal.App.5th at p. 1290; see also *id.* at p. 1286 [substantial evidence supported finding that initial ICWA inquiry was adequate where "the agency inquire[d] of the parents and seven extended family members on the child's paternal side but fail[ed] to inquire of the paternal grandfather"].) Nothing from the information provided by the numerous relatives questioned suggested that minor had Indian ancestry or that the paternal grandfather would have disclosed anything different. " 'The juvenile court has discretion to determine when enough is enough.' [Citation.]" (*In re K.G.* (2025) 117 Cal.App.5th 379, 385.)

## DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

GILBERT, J.*

We concur:

CHAVEZ, Acting P. J.

RICHARDSON, J.

---

\* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8